1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LAWRENCE GRANT,

11           Plaintiff,              No. CIV S-06-1686 WBS GGH

12      vs.

13
     MICHAEL J. ASTRUE,[1]
14   Commissioner of
     Social Security,
15
             Defendant.           FINDINGS AND RECOMMENDATIONS
16   _____/

17           Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

19   under Title II of the Social Security Act ("Act").  For the reasons that follow, the court

20   recommends that plaintiff's Motion for Summary Judgment be denied, the Commissioner's

21   Cross Motion for Summary Judgment be granted, and the Clerk of Court be directed to enter

22   judgment for the Commissioner.

23   \\\\\

24   _____

25           [1]  Michael J. Astrue became Commissioner on February 12, 2007.  Accordingly, he
     should be substituted as defendant in this suit.  Fed. R. Civ. P. 25(d)(1).  No further action need
26   be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
     405(g).

                                        1

BACKGROUND

Plaintiff, born January 19, 1959, applied for disability benefits on December 1, 2003. (Tr. at 67.) He alleges inability to work since May 18, 2002, due to bipolar disorder, attention deficit disorder ("ADD"), depression, anxiety, sleep disorder, and chronic headaches. (Tr. at 67, 73.) Previous to this application, plaintiff had applied for DIB on July 11, 2000, and was denied benefits on May 17, 2002. (Tr. at 32-42.) Plaintiff did not appeal that decision. (Id. at 16.)

In the most recent decision, dated December 8, 2005, ALJ James M. Mitchell determined plaintiff was not disabled. The ALJ made the following findings:[2]

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 1,

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1    2003.

2    2.    The claimant filed his current application for Supplemental Security
           Income benefits on December 1, 2003 alleging an inability to work
3          because of a disabling condition on May 18, 2002.[3]

4    3.    Previously, on May 17, 2002, Administrative Law Judge Thompson found
           the claimant not disabled.
5
6    4.    A presumption of continuing non-disability arose from Judge Thompson's
           decision.

7    5.    The claimant has not engaged in substantial gainful activity since the
           alleged onset of disability.
8
9    6.    The claimant's depression and anxiety are considered "severe" based on
           the requirements in the Regulations 20 CFR § 404,1520(c).

10   7.    These medically determinable impairments do not meet or medically equal
           one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
11
12   8.    The claimant's subjective statements regarding pain and other symptoms
           have been considered, but to the extent that those statements constitute an
13         allegation that the claimant has been precluded from engaging in all
           substantial gainful activity by a medically determinable impairment or
14         impairments for a period of time which has lasted or reasonably can be
           expected to last for 12 continuous months, they are not found credible in
15         light of the medical evidence and the claimant's statements and conduct as
           set forth in the body of the decision.

16   9.    The claimant has the following residual functional capacity: can lift and
           carry up to 50 pounds occasionally and up to 25 pounds frequently; he can
17         occasionally climb, balance, stoop, kneel, crouch, and crawl; he must
           avoid heights, vibrations and moving machinery; he can understand
18         remember and carry out only simple job instructions; he can perform one
           and two step job processes, contact with the general public and co-workers
19         is to be restricted and he must work in a low stress job.

20   10.   The claimant is unable to perform any of his past relevant work (20 CFR §
           404.1565).
21
22   11.   The claimant is a "younger individual between the ages of 45 and 49" (20
           CFR § 404.1563).

23   12.   The claimant has a "high school (or high school equivalent) education"
           (20 CFR § 404.1564).
24

25

26        [3]  The ALJ mistakenly refers to SSI; however, the only application in the record is for
     disability insurance benefits.  (Tr. at 67-69.)

                                          3

13.     The claimant has transferable skills from skilled work previously
        performed as described in the body of the decision (20 CFR § 404.1568).

14.     The claimant has the residual functional capacity to perform a significant
        range of medium work (20 CFR § 404.1567).

15.     Although the claimant's exertional limitations do not allow him to perform
        the full range of medium work, using Medical-Vocational Rule 203.29 and
        203.30 as a framework for decision-making, there are a significant number
        of jobs in the national economy that he could perform.  Examples of such
        jobs include work as an assembler, at the light level of exertion, with
        97,000 jobs in the State of California; hotel/motel cleaner, at the light level
        of exertion, with 26,000 jobs in the State of California; and auto detailer,
        at the medium level of exertion, with 10,000 jobs in the State of
        California.

16.     The claimant has not made a showing of "changed circumstances" since
        the date of Judge Thompson's prior decision, and the presumption of
        continuing non-disability arising out of the prior decision dated September
        13, 2002 has not been rebutted; the claimant continues to be not disabled
        within the meaning of the Social Security Act, as amended.

17.     The claimant was not under a "disability," as defined in the Social Security
        Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(Tr. at 26-27.)

            For the current application, the time period during which plaintiff must establish

disability is after May 17, 2002, the date of the decision on the prior application finding plaintiff

was not disabled, due to its administrative res judicata effect, and before December 1, 2003, the

date his insured status expired.  Moreover, having been denied disability on his first application,

a presumption of continuing nondisability arises.  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.

1985).  Plaintiff "can overcome this presumption by proving 'changed circumstances' indicating

a greater disability."  Id. (quoting Booz v. Secretary, 734 F.2d 1378, 1379-80 (9th Cir.1984)); see

also Pearson v. Secretary of Health and Human Services, 780 F. Supp. 682, 686 (E.D. Cal.1991)

(presumption from prior decision of continuing non-disability must be overcome by a showing of

"changed circumstances" indicating a greater disability).

\\\\\

\\\\\

4

1    ISSUES PRESENTED

2            Plaintiff has raised the following issues: A.  Whether the ALJ Erred in not Finding

3    Plaintiff had Established "Changed Circumstances;"  B.  Whether the ALJ Improperly Relied on

4    Evidence not Contained in the Record: the Vocational Expert's Testimony at the First Hearing

5    Which is not Part of This Record; and C. Whether the ALJ Erred in Discrediting the Opinions of

6    Drs. White, Hespel, and McCormack, that Plaintiff's Disabling Limitations Commenced Prior to

7    December, 2003.

8    LEGAL STANDARDS

9            The court reviews the Commissioner's decision to determine whether (1) it is

10   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

11   the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

12   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

13   Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

14   accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

15   1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

16   (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

17   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

18   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

19   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

20   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

21   ANALYSIS

22       A.  Whether the ALJ Erred in not Finding Plaintiff had Established "Changed

23   Circumstances"

24           Plaintiff contends that the evidence submitted after the first decision indicates new

25   and/or worsening diagnoses, including bipolar disorder, personality disorder, and worsening

26   headaches, as supported by the opinions of treating sources.

1          Plaintiff's disability insurance expired on December 1, 2003.  The parties agree,

2   and the ALJ found, (Tr. at 17), that the doctrine of administrative res judicata establishes that

3   plaintiff was not disabled as of May 17, 2002.  See Taylor v. Heckler, 765 F.2d 872, 876 (9th

4   Cir.1985) ("res judicata applies to findings and decisions on the merits which become final as a

5   result of a claimant's failure to seek administrative review after notice of an adverse decision.");

6   Lyle v. Secretary of Health & Human Servs., 700 F. 2d 566, 568 (9th Cir. 1983) ( "[I]n the

7   absence of proof of change, a prior ruling respecting disability gives rise to a presumption that

8   the condition continues to exist.").  Accordingly, the parties agree that, for the current

9   application, the time period during which plaintiff must establish disability is the approximately

10  year and a half period from May 18, 2002 to December 1, 2003.  Moreover, having been denied

11  disability on his first application, a presumption of continuing nondisability arises.  Taylor, 765

12  F.2d at 875.  Plaintiff  "can overcome this presumption by proving 'changed circumstances'

13  indicating a greater disability."  Id. (quoting Booz v. Secretary, 734 F.2d 1378, 1379-80 (9th

14  Cir.1984)); see also Pearson v. Secretary of Health and Human Services, 780 F. Supp. 682, 686

15  (E.D. Cal.1991).

16         Analyzing the difficult issues in this psychiatric ailment case is much like looking

17  at a murky pond and describing the items at the bottom.  Everyone thinks they see something, but

18  one hardly has confidence in the opinions given as to what they see.  And, the further the opinion

19  giver is from the pond, the more questions one would have in that persons' ability to see

20  anything.  Here, every medical person probes the murky symptoms exhibited or related by

21  plaintiff and comes up with sometimes similar, sometimes differing opinions as to plaintiff's

22  problems, and "guessing" the long terms effects on plaintiff's ability to work.  To exacerbate the

23  problem, some of the medical personnel are opining on a medical condition distant in time from

24  when they saw plaintiff.

25         Plaintiff's problem here is that he has the burden of showing symptomatology and

26  work effects therefrom *in the rather narrow window period of eligibility* that sufficiently show a

worsening of the conditions previously adjudicated such that a permanent disability can be described as having commenced in that narrow period.  To complicate matters, the efficacy of plaintiff's medication in the pertinent time period is entirely unclear.  At times, psychiatric medication can make a person "normal" in a work or life setting – that, after all, is the goal of the medication.  At the other end of the spectrum, the medication is either useless, or comes with such side effects that it cannot be taken.  Determining the efficacy of medication for the time period associated with disability, 12 months or longer, is difficult in that medical records often do not exhibit consistency in this respect.  Plaintiff has a difficult burden indeed.

In the December 8, 2005, decision on plaintiff's second application, ALJ Mitchell found that because plaintiff did not appeal the earlier adverse decision, it was administratively final and therefore there was no basis to reopen it.  Therefore, the presumption of continuing non-disability applies here, at least as to those matters considered in the prior decision, which included plaintiff's depression, anxiety, and headaches.  (Tr. at 18.)  Bipolar disorder and borderline personality disorder were not expressly considered by ALJ Thompson, who issued the first decision.  Plaintiff accordingly had the burden of adducing evidence of changed circumstances, a burden ALJ Mitchell found plaintiff did not meet.  (Tr. at 27.)

Plaintiff now contends that the evidence submitted in connection with the second application shows a deterioration in his condition as a whole.  Plaintiff cites to more recent medical evidence indicating diagnoses of bipolar disorder and borderline personality disorder, and claims that the ALJ did not analyze the effects of these impairments, let alone acknowledge them as severe impairments.

Plaintiff refers to only one diagnosis of borderline personality disorder in the record, and the court found no other references to this impairment.  On March 9, 2005, well after plaintiff's date last insured, Dr. White made this diagnosis, along with ADD with hyperactivity, and recommended that he be found disabled as of January, 2001, almost three years earlier.  (Tr. at 380.)

7

1   In general, medical reports should not be disregarded solely because they are

2   rendered retrospectively.  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).  In fact,

3   retrospective medical reports are relevant to a prior period of disability.  Id.  Considerations to be

4   made in whether to give such a report less weight include:  whether the report specifically

5   assessed plaintiff's functional capacity prior to the insured's expiration date, whether the medical

6   reports created during the time period at issue made only limited references to limitations in

7   functional capacity; whether intervening circumstances such as a car accident exacerbated the

8   medical condition; and whether the retrospective opinion conflicted with the same physician's

9   earlier opinion.  Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

10   The Commissioner is correct that this physician had no personal knowledge of

11   plaintiff's condition prior to 2005, but her opinion of disability after plaintiff's last insured date

12   of December 1, 2003 cannot be rejected solely on this basis.  Smith, 849 F.2d at 1225.  The ALJ

13   here did not reject Dr. White's opinion on this basis alone, however.  He noted that this

14   psychiatrist's findings were inconsistent with the record as a whole, that it was inconsistent with

15   Dr. Heslep's retrospective opinion, issued around the same time period, and that it failed to

16   explain why its conclusion was so severe in light of the same level of limitation exhibited by

17   plaintiff since January, 2001.  (Id. at 25.)

18   Dr. White is the only practitioner who made this diagnosis of the more than ten

19   doctors in the record who evaluated plaintiff.  Furthermore, her decision was issued almost a year

20   and a half after his date last insured.  Additionally, Dr. White's diagnosis is based on an office

21   evaluation and a slew of medical records, all reflecting symptomology consistent with plaintiff's

22   presentation to Dr. White, and which resulted in other types of diagnoses by other practitioners,

23   including specialists, none of which was borderline personality disorder.  Plaintiff's symptoms

24   were described similarly to those on record before the first ALJ, indicating circumstances had not

25   changed since the prior application.

26   \\\\\

8

1    Moreover, as pointed out by defendant, retrospective opinions are even less

2 persuasive in the specialty of mental health.  "The opinion of a psychiatrist who examines the

3 claimant after the expiration of his disability insured status, however, is entitled to less weight

4 than the opinion of a psychiatrist who completed a contemporaneous exam." Macri v. Chater, 93

5 F.3d 540, 545 (9th Cir. 1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)

6 ("After-the-fact psychiatric diagnoses are notoriously unreliable"); Weetman v. Sullivan, 877

7 F.2d 20, 23 (9th Cir.1989) (new medical report following adverse administrative decision

8 denying benefits carries little, if any, weight) (citing Key v. Heckler, 754 F.2d 1545, 1550 (9th

9 Cir.1985)).

10    In regard to plaintiff's complaint that the second ALJ did not analyze his bipolar

11 disorder, plaintiff is correct, but the effect of that omission is far from clear.  Without analysis of

12 what different psychiatric labels mean, plaintiff believes that the mere different label attached to

13 plaintiff's condition is all that is necessary to show changed circumstances.  However, the

14 important aspect of this case is not the label attached to plaintiff's condition, but whether

15 plaintiff's symptoms grew worse than they had been, and were unremediable with medication.

16 The first mention of bipolar disorder in the record is February 1, 2001, when Dr. Peterson noted

17 "probable bi-polar disorder."  (Id. at 256.)  On February 20, 2002, "mania-depressive syndrome"

18 was noted in the Pathways Healthcare treating records.  (Id. at 235.)  On March 29, 2002,

19 plaintiff was finally assessed with bipolar disorder. (Id. at 234.)  All these notations were made

20 prior to the first ALJ decision.  After the decision, but before plaintiff's eligibility status expired,

21 he was diagnosed with bipolar disorder on May 22, 2002, June 17, 2002, and October 24, 2003.

22 (Id. at 227, 216.)  He continued to be diagnosed with this illness in 2004, after his insured status

23 expired.  (Id. at 216, 293, 213.)  The principle that after the fact psychiatric diagnoses are

24 notoriously unreliable applies to this impairment also.  In fact, Dr. Millspaw also diagnosed

25 bipolar disorder but stated the onset date was "unknown."  (Id. at 293.)

26 \\\\\

9

1    It appears that plaintiff's condition worsened over time, and the medical record

2 from 2004 proves the suspicions Dr. Peterson and others had in 2002 and 2003, that plaintiff had

3 probable bipolar disorder.  Nevertheless, during the period at issue, plaintiff's bipolar disorder

4 was first appearing on the horizon, assuming it differs in large part from mere depression, was

5 not severe enough to be considered by the first ALJ.

6    This condition was not discussed by the first ALJ; however, plaintiff's depression

7 was found to be a severe impairment at the time, based on the very same symptoms exhibited by

8 plaintiff to various physicians, some of whom diagnosed bipolar disorder.  Therefore, plaintiff's

9 bipolar disorder does not constitute a changed circumstance.  In fact, Dr. Peterson referred to

10 probable bipolar disorder at the same time he diagnosed depression, both of which were based on

11 the same presentation of symptoms.  (Id. at 257.)  The first ALJ fully analyzed plaintiff's

12 symptoms at the time.

13    Plaintiff did seek general medical treatment at Pathways Healthcare during the

14 pertinent window of time, yet there are notations that he did not take medications due to financial

15 reasons, forgetfulness, and side effects.  (Id. at 227, 226, 234.)[4]  Non-compliance was discussed

16 with him.  (Id. at 225.)  It appears that the prescribed medication was helping plaintiff, at least at

17 times.  For example, on August 1, 2002, plaintiff's affect was improved, and he appeared more

18 relaxed.  On August 22, 2002, plaintiff stated that Prozac was effective. (Id. at 226.)   A

19 condition which can be controlled or corrected by medication is not disabling.  See Montijo v.

20 Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with

21 medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib

22 condition controlled with antibiotics not considered disabling).  Furthermore, although he was

23 referred to a psychiatrist on July 1, 2002, there is no record that plaintiff actually followed up on

24 the referral.  (Id. at 226.)   The ALJ opined that plaintiff's symptoms were not as serious as

25

26    [4] Plaintiff also denied suicidal thoughts during this time period.  (Id. at 227.)

Case 2:06-cv-01686-WBS-GGH   Document 23   Filed 08/16/07   Page 11 of 19

1   alleged if he was not taking prescribed medication or following through with recommended

2   psychological counseling.  (Id. at 20, 234.)

3            Plaintiff has not overcome the presumption of continuing non-disability.  To the

4   extent that plaintiff's condition worsened over time, such worsening occurred after his last

5   insured date and would not be relevant to the instant case, but to a new application for benefits.

6            B.  Whether the ALJ Erred in Discrediting the Opinions of Drs. White, Hespel, and

7   McCormack, that Plaintiff's Disabling Limitations Commenced Prior to December, 2003

8            Plaintiff alleges that the ALJ should have credited the opinions of Drs. White,

9   Hespel, McCormack, Millspaw and Peterson[5] regarding the commencement of plaintiff's

10  limitations prior to December, 2003, and he did not give adequate reasons for rejecting them.

11           The weight given to medical opinions depends in part on whether they are

12  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

13  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[6]  Ordinarily,

14  more weight is given to the opinion of a treating professional, who has a greater opportunity to

15  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

16  Cir. 1996).

17           To evaluate whether an ALJ properly rejected a medical opinion, in addition to

18  considering its source, the court considers whether (1) contradictory opinions are in the record;

19  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

20  a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

21

22       [5]  Drs. Millspaw and Peterson are not mentioned in plaintiff's subheading for this section,
     but plaintiff objects to the ALJ's analysis of these doctors also.

23       [6]  The regulations differentiate between opinions from "acceptable medical sources" and
     "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24   psychologists are considered "acceptable medical sources," and social workers are considered
     "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25   when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
     regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26   accordingly are given less weight than opinions from "acceptable medical sources."

81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996), *citing* Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984).

In regard to Dr. White, the ALJ first summarized this lengthy report in detail.  He noted this a consulting psychiatrist's diagnosis of borderline personality disorder and ADD with hyperactivity which impair interpersonal, vocational, social, emotional, and interpersonal functioning.  (Tr. at 24, 380.)  He then explained his reasons for rejecting it:

> I give little weight to these findings as they are inconsistent with
> the record as a whole.  I also note that the claimant's limitations
> have existed at this severity since January 2001 without provided
> detailed or clarifying comments for this finding.  Again, Dr. White
> speculates about an on-set date four years prior to her examination.
> It should be noted that while Dr. Hespel indicated an on-set date in

---

[7]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1
                  1995, but two months later Dr. White suggests an on-set of 2001,
2
                  six years after Dr. Hespel's speculation of the on-set of 1995.

3
(Id. at 25.)

4
         The court finds these reasons to be specific and legitimate.  As discussed in the

5
previous section, the ALJ points out the problems with retrospective opinions, especially where

6
they concern mental health opinions.  The contradictory opinions of Drs. White and Hespel

7
regarding the onset date is proof that this concern is legitimate, especially when considered with

8
Dr. Millspaw's 2004 opinion that the onset date was unknown.  (Id. at 293.)  In other words,

9
everyone is just guessing.  Furthermore, Dr. White opined that plaintiff is disabled; however such

10
opinion is not binding on this court.  "A statement by any physician that the claimant is disabled

11
or unable to work is a conclusion on the ultimate issue to be decided . . . and is not binding on the

12
[ALJ] in reaching his determination as to whether the claimant is disabled within the meaning of

13
the [Act]."  Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856

14
F.2d 1335 (9th Cir. 1988), 20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen,

15
881 F.2d 747, 750-51 (9th Cir. 1989).  Finally, although Dr. White's opinion is certainly

16
thorough and detailed, it was based on an evaluation completed May 6, 2005, almost a year and a

17
half after plaintiff's insured status expired.

18
         In regard to Dr. Hespel, a treating psychiatrist, the ALJ summarized this opinion

19
which rendered no diagnosis, but was a check marked form, finding plaintiff was moderately

20
impaired in remembering locations and work procedures, maintaining socially appropriate

21
behavior, and taking appropriate precautions for normal hazards.  (Id. at 369-71.)  Plaintiff was

22
found to be moderately to markedly impaired in understanding, remembering, and carrying out

23
short and simple instructions.  Plaintiff was markedly limited in understanding, remembering and

24
carrying out detailed instructions, maintaining attention and concentration, performing activities

25
within a schedule, maintaining regular attendance, sustaining an ordinary routine, making simple

26
work related decisions, completing a normal work day, interacting appropriately with others,

1   requesting assistance, getting along with coworkers, accepting instructions and responding to

2   criticism, responding appropriately to changes at work, and setting realistic goals.  (Id.)  In sum,

3   plaintiff was expected to be unable to complete a work day more than three or four times per

4   month.  (Id. at 372.)

5                   The ALJ then rejected this opinion as speculative because it was dated March

6   24, 2005, over a year after plaintiff's last insured date, and rendered an onset date of January,

7   1995, more than ten years earlier.  (Id. at 24.)  The ALJ also referred to the previously mentioned

8   discrepancy with Dr. White's onset date of January, 2001, six years later.  (Id. at 25.)  The ALJ

9   additionally noted that this report was "excessively severe in comparison with other credible

10  evidence in the record."  (Id. at 24.)   This explanation is supported by the record.  For example,

11  Dr. Tyl's April 14, 2004 report found plaintiff was only moderately limited in the same activities

12  for which Dr. Hespel imposed marked restrictions.  She also did not opine that plaintiff would

13  miss work due to his illness.  (Tr. at 185-201.)  See also discussion infra.  Furthermore, the ALJ

14  was entitled to reject the check-off report of Dr. Hespel which contained little explanation, let

15  alone diagnoses, of the bases for its conclusions.  See Murray v. Heckler, 722 F.2d 499, 501 (9th

16  Cir.1983) (expressing preference for individualized medical opinions over check-off reports).

17  Furthermore, medical opinions which are conclusory and are unsupported by objective

18  findings may be rejected on that basis alone.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

19  1989); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986).  Similarly, the lack of medical

20  treatment for plaintiff's condition belies the conclusion that it is disabling.  Flaten v. Secretary of

21  HHS, 44 F.3d 1453, 1464 (9th Cir. 1995) (lack of medical treatment is valid basis for rejecting

22  claims);  Fair v. Bowen, 885 F.2d at 603-04 (conservative or infrequent treatment belies

23  allegations of disabling impairment).

24                  It is true that Dr. Tyl's report was also a form and constituted a retrospective

25  opinion; however, it was the ALJ's province to choose between the two reports.  "Where the

26  opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating

1   source is based on independent clinical findings that differ from those of the treating physician,

2   the opinion of the nontreating source may itself be substantial evidence; it is then solely the

3   province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.

4   1995), citing Magallanes, 881 F.2d at 751.

5           With respect to Mr. McCormack, plaintiff makes no argument, other than that it is

6   consistent with Dr. White's and Heslep's opinion.  Plaintiff, however, cites to no part of the

7   record containing any treatment or opinion by Mr. McCormack.  Bare contention, unsupported by

8   explanation or authority, may be deemed waived.  See Seattle School Dist., No. 1 v. B.S., 82

9   F.3d 1493, 1502 (9th Cir. 1996) (party who presents no explanation in support of claim of error

10  waives issue).  The court has located records of this licensed clinical social worker,[8] but they are

11  dated well after the relevant time period, from May 25, 2005 to May 1, 2006, and as they are

12  treating records, they do not purport to give a retrospective opinion.  (Tr. at 411-61.)

13  Furthermore, they were submitted to the Appeals Council on May 16, 2006, after the second ALJ

14  opinion.  Therefore, the ALJ cannot be faulted for failing to mention them.

15          The ALJ also fully discussed the records of Joyce Millspaw, a family practice

16  nurse practitioner and Ph.D.  He noted that Dr. Millspaw wrote that plaintiff "IS NOT mentally

17  and/or physically unfit for gainful employment ..."  (Id. at 23, 294.)  Dr. Millspaw did check this

18  box, but later in the form checked an inconsistent box which stated that if plaintiff is unable to

19  work, indicate how long this inability would last.  This practitioner checked the box,

20  "permanently," after diagnosing bipolar disorder that was poorly controlled.  (Id. at 293, 294.)

21  This inconsistency points out one of the problems with check off reports.  The ALJ also points to

22  Dr. Millspaw's letter encouraging a finding of disability which does appear to clarify the

23

24     [8] A licensed clinical social worker is not an "acceptable medical source" but rather an
     "other source."  20 CFR § 404.1513(a), (d).  The ALJ may consider this evidence but is not
25  required to adhere to the treating physician rule in evaluating it.  Koschnitzke v. Barnhart, 293
     F.Supp.2d 943, 950 (E.D. Wisc. 2003).  When giving such an opinion less weight, the ALJ must
26  only provide reasons that pertain to that witness.  Id.

15

1 inconsistency; however, he notes that it is undated.  (Id. at 23.)  It states that plaintiff is "truly a

2 danger to himself and others," and he may put a coworker at risk due to his behavior.[9]  (Id. at

3 295.)  Unfortunately, this opinion is undated and was presumably written at or after the time of

4 treatment, which is unknown, although she states that she had treated plaintiff for three and a half

5 years.  Plaintiff does not point to any treating records of this nurse practitioner.  Her opinion was

6 also after the relevant period, September 16, 2004, and because she was a treating source, her

7 opinion was current for that date.  In fact, when asked to fill in the onset date on the form,

8 Millspaw did not even attempt to speculate, but wrote, "unknown."  (Id. at 293.)  The ALJ

9 correctly gave little weight to this opinion as it was inconsistent on the issue of plaintiff's fitness

10 for employment, and contrasted sharply with the other evidence of record.  (Id. at 23.)  He added

11 that this opinion was also discredited because it was on the ultimate issue of disability, which is

12 reserved to the Social Security Commissioner.  (Id.)  See  Murray v. Heckler, 722 F.2d 499 (9th

13 Cir. 1983) ("A statement by any physician that the claimant is disabled or unable to work is a

14 conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his

15 determination as to whether the claimant is disabled within the meaning of the [Act].").  The

16 ALJ's reasons to discount this opinion are sufficient, but most importantly, the opinion relates to

17 a period well after the expiration of plaintiff's date last insured, and does not purport to be

18 retrospective.

19            Plaintiff also objects to the ALJ's treatment of Dr. Peterson's functional

20 assessment, dated June 18, 2001, where the ALJ noted "I give appropriate weight to these

21 findings as they consist largely of checked boxes and detailed explanations are not provided."

22 (Id. at 22.)  Plaintiff objects to the ALJ's failure to discuss Dr. Peterson's opinion that plaintiff

23 would not be able to perform any functions of work when he was having migraines.  (Id. at 242-

24 46.)  This family practitioner who treated plaintiff opined that plaintiff had severe depression

25 ───────────────

26      [9]  It should be noted that the ALJ provided for elimination of any potential problem by limiting plaintiff to restricted contact with coworkers and the public.  (Id. at 27.)

1    with migraines on a daily basis.  (Id. at 242.)  This report was before the first ALJ, who

2    nevertheless found plaintiff not disabled.  The second ALJ gave it minimal weight because it was

3    a check off form report which did not provide detailed explanations.  (Id. at 22.)  This form did

4    not include a mental status exam, and plaintiff did not show why it was error to give it minimal

5    weight.  Dr. Peterson's records include an MRI, dated June 14, 2001, which was negative.  (Id. at

6    247-48.)  Additionally, on February 1, 2001, plaintiff reported that Wellbutrin helped his

7    headaches in the past, and Dr. Peterson prescribed this medication again.  (Id. at 256.)  It should

8    be noted that ALJ Thompson found that plaintiff's headaches were not migraines at all, but rather

9    muscle contraction headaches, caused by his mental impairments.  (Id. at 38.)  This finding was

10   based on the fact that OxyContin did not relieve the headaches, and was supported by an April,

11   1998 neurological exam which found muscle contraction headaches.  (Id.)

12          Moreover, as discussed by the ALJ, on March 29, 2002, plaintiff refused "to

13   return to psych. counseling," admitted to "faking/pretending," and admitted he was not taking the

14   prescribed Zyprexa and hypertension medications.  (Id. at 234, 20.)  On June 18, 2001, Dr.

15   Peterson noted that plaintiff was "recalcitrant to various treatment modalities."  (Id. at 253.)  The

16   ALJ concluded that plaintiff's symptoms were not as serious as alleged.  (Id. at 20.)  The ALJ

17   also pointed to other records indicating that plaintiff's symptoms improved when he took his

18   medication.  See discussion supra Section A.

19          To the extent the ALJ did rely on more recent reports, substantial evidence

20   supports his decision to place more weight on the report provided by Dr. Tyl, a psychiatrist who

21   evaluated plaintiff's records in April, 2004.  Dr. Tyl opined in a psychiatric review technique

22   form that plaintiff had bipolar disorder, but had only moderate limitations in concentration,

23   understanding, remembering and carrying out detailed instructions, working with others without

24   being distracted, being able to complete a normal work day and week without interruptions from

25   symptoms, acting appropriately with the public, responding to criticism, getting along with

26   coworkers, and responding to changes in the work setting.  (Id. at 188, 195, 198-99.)  The ALJ

17

1    did properly note, however, that this report consisted of checked boxes.  Like the reports which

2    the ALJ rejected, it too was based on plaintiff's condition in a much later time period and is not

3    relevant to the period at issue.

4            The ALJ properly analyzed the evidence, such as it was, and appropriately gave

5    less weight to the retrospective reports.

6        C.  Whether the ALJ Improperly Relied on Evidence not Contained in the Record: the

7    Vocational Expert's Testimony at the First Hearing Which is not Part of This Record

8            Plaintiff contends that the ALJ improperly relied on the vocational expert's

9    testimony from the first hearing because the transcript from that hearing is not contained in the

10   record.  Plaintiff argues that in so relying, the ALJ stated that he was relying on the grids, but

11   also recited the testimony of the vocational expert.  He then made a new finding of fact at step

12   five.  In fact, the second hearing decision reveals that ALJ Mitchell adopted the ALJ Thompson's

13   finding regarding plaintiff's residual functional capacity, because little had changed since that

14   decision.  (Id. at 19, 25.)  The fact that the vocational expert's testimony is not in this record is

15   beside the point.  Judge Thompson's decision analyzing the vocational testimony *is* in the record,

16   and it is entitled to res judicata effect unless there have been changed circumstances, which is

17   plaintiff's burden to prove.  Because ALJ Mitchell correctly analyzed the new medical evidence

18   since that first decision, and correctly noted that there was no medical evidence submitted for the

19   relevant time period which would show changed circumstances, it was appropriate for him to

20   accept substantial evidence of record which did not reflect changed circumstances, and proceed

21   to the next step.  Because the medical evidence upon which he chose to rely had not changed, he

22   was entitled to rely on the previous ALJ decision in regard to steps four and five of the sequential

23   analysis.  Plaintiff has not shown changed circumstances which would affect the previous

24   vocational analysis at step five.

25   \\\\\

26   \\\\\

18

1  CONCLUSION

2          IT IS HEREBY RECOMMENDED that: Plaintiff's Motion for Summary

3  Judgment be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and

4  the Clerk of Court be directed to enter judgment for the Commissioner.

5          These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

7  (10) days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten (10) days after service of the objections.  The parties are

11  advised that failure to file objections within the specified time may waive the right to appeal the

12  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: 8/16/07

                                          /s/ Gregory G. Hollows
14  _____

15                                         GREGORY G. HOLLOWS
                                          U.S. MAGISTRATE JUDGE
16  GGH/076
    Grant1686.ss.wpd

17

18

19

20

21

22

23

24

25

26